## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| COMMODITY FUTURES TRADING COMMISSION,<br><br>           Plaintiff,<br><br>v.<br><br>MICHAEL J. SALERNO,<br>BLACK DIAMOND FOREX LP,<br>BDF TRADING LP (d/b/a Advanta FX), and<br>ADVANTA CAPITAL MARKETS, INC.<br>(d/b/a Advanta FX),<br><br>           Defendants,<br><br>and<br><br>BLACK DIAMOND INVESTMENT GROUP LLC,<br>ADVANTA CAPITAL MARKETS LTD., f/k/a<br>BLACK DIAMOND CAPITAL LTD., f/k/a<br>BLACK DIAMOND FOREX LTD.,<br><br>           Relief Defendants. | Civil Action No. 18-1585 |

## ORDER AND JUDGMENT BY DEFAULT AGAINST DEFENDANTS MICHAEL J. SALERNO, BLACK DIAMOND FOREX LP, BDF TRADING LP AND ADVANTA CAPITAL MARKETS, INC. AND RELIEF DEFENDANT BLACK DIAMOND INVESTMENT GROUP, LLC

Plaintiff Commodity Futures Trading Commission has filed a Motion for Default Judgment Against Michael J. Salerno, Black Diamond Forex LP, BDF Trading LP and Advanta Capital Markets, Inc. and Relief Defendant Black Diamond Investment Group ("BDIG"). Good cause having been shown, judgment by default is hereby entered against Defendants and Relief Defendants pursuant to Local Rule of Civil Procedure 55.2(b) and Federal Rule of Civil Procedure 55(b) as set forth below.

## I.      BACKGROUND

On April 17, 2018, Plaintiff filed a Complaint seeking emergency relief against Defendants and Relief Defendants to halt ongoing fraudulent conduct in connection with the fraudulent solicitation of members of the public to become foreign currency ("forex") proprietary traders in Defendants Black Diamond Forex LP, BDF Trading LP (a/k/a "Advanta FX"), and Advanta Capital Markets, Inc. (a/k/a "Advanta FX") (collectively, the "Black Diamond Entities"). The same day, this Court entered a Statutory Restraining Order ("SRO") freezing Defendants' and Relief Defendants' assets, prohibiting the destruction of books and records; and permitting the CFTC access and inspection of Defendants' records.[1]

Defendant Salerno, individually and on behalf of Black Diamond Forex LP, BDF Trading LP, and Advanta Capital Markets, Inc. and Relief Defendant Black Diamond Investment Group signed waivers of service of summons on April 25, 2018.[2] Summons was issued to Advanta Capital Markets Ltd. and was served through Francine DeYoung, who is the person designated to accept service for Wilfred Services Ltd., registered agent for Advanta Capital Markets Ltd,. on June 4, 2018.[3] All Defendants and Relief Defendants were properly served with copies of all of the CFTC's pleadings, papers and the SRO. All Defendants and Relief Defendants' answers were due on June 25, 2018, but none answered the Complaint.  The Court held a hearing on May 15, 2018, on the motion to approve a consent order for a preliminary injunction, at which Salerno appeared and did not at that time contest any allegations.[4] Default has been entered against all

---

[1] Doc. No. 5.

[2] Doc. No. 8.

[3] Doc. No. 16.

[4] Doc. No. 15 (minute sheet).

Defendants and Relief Defendant.[5]

## II.   DEFAULT JUDGMENT IS WARRANTED

Federal Rule of Civil Procedure 55(b)(2) "authorizes a court to enter default judgment against a properly served defendant who fails to file a timely responsive pleading."[6] Before granting a default judgment, the court must "ascertain whether the unchallenged facts constitute a legitimate cause of action."[7] After making that determination, courts consider three factors in assessing whether to grant a default judgment: (1) whether the plaintiff will be prejudiced if default judgment is denied; (2) whether the defendants appear to have a litigable defense; and (3) whether the defendants' delay is due to culpable conduct.[8]

### A.  Legitimate Cause Of Action

Substantial documentation has been submitted in support of the Motion for Default Judgment, including the Declaration of Joy McCormack and the exhibits thereto, which demonstrate that, as alleged in the Complaint and assumed to be true for purposes of default judgment, beginning in at least January 2017, Defendant Salerno, individually and as agent and officer of the Black Diamond Entities, fraudulently solicited members of the public to become foreign currency ("forex") traders and accepted funds from them by intentionally or recklessly making false and misleading statements, in websites and in written and oral communications, and failed to disclose material facts, including: (a) telling prospective traders that their deposits, termed "risk capital," would be placed into live forex trading accounts; (b) that Salerno would

---

[5] Doc. No. 20.

[6] *Travelers Cas. & Surety Co. of Am. v. Perlman*, 351 F. Supp. 3d 930, 932 (E.D. Pa. 2019) (citing *Anchorage Assocs. v. V.I. Bd. of Tax Review*, 922 F.2d 168, 177 n.9 (3d Cir. 1990)).

[7] *Phoenix Ins. Co. v. Small*, 307 F.R.D. 426, 433 (E.D. Pa. 2015) (citing *Chanel, Inc. v. Gordashevsky*, 558 F. Supp. 2d 532, 535–36 (D.N.J. 2008)).

[8] *Chamberlain v. Giampapa*, 210 F.3d 154, 164 (3d Cir. 2000) (citing *United States v. $55,518.05 in U.S. Currency*, 728 F.2d 192, 195 (3d Cir. 1984)).

supplement these risk capital deposits with Black Diamond Entity funds in prospective traders' live trading accounts; (c) touting his successful forex trading career when in fact he has not personally traded forex in the last five years; (d) failing to disclose Salerno's felony conviction in 2005 for failure to file proper forms and pay employment taxes in connection with a real estate investment firm; and (e) failing to disclose Salerno's Chapter 7 bankruptcy filing and discharge in 2015. Additionally, Salerno misappropriated prospective traders' risk capital deposits by using them for purposes other than for forex trading.

Plaintiff has alleged violations of Section 4b(a)(2)(A)-(C) of the Commodity Exchange Act ("the Act"), 7 U.S.C. § 6b(a)(2)(A)-(C) (2012) (Count I) and Regulation 5.2(b)(1) and (3), 17 C.F.R. §5.2(b)(1) and (3)(2017) (Count II). The allegations of the Complaint and the supporting documentation to the Motion for Default Judgment demonstrate that Defendants acted with the requisite scienter and that, with regard to Regulation 5.2(b), the acts or omissions involved the use of the mails or by any means or instrumentality of interstate commerce.[9]

Section 13(b) of the Act provides that any person who, directly or indirectly, controls any person who has violated the Act, or regulations promulgated thereunder, may be held liable for such violations to the same extent as the controlled person. To establish liability as a controlling person pursuant to Section 13(b), plaintiff must show that the person possesses the requisite degree of control and either: (1) knowingly induced, directly or indirectly, the acts constituting the violation; or (2) failed to act in good faith.[10] As Plaintiff has shown that Salerno was

---

[9] *See* McCormack Decl. [Doc. No. 27-2] at ¶¶ 61, 67,75, 104 (Salerno and the Black Diamond Entities operated across the United States, and Salerno emailed written communications containing fraudulent misrepresentations to prospective traders and Black Diamond Entities personnel).

[10] *CFTC v. Equity Fin. Grp. LLC,* 572 F.3d 150,160-61 (3d Cir. 2009)(defendants continued operating a commodity pool without registering, despite knowing that it was in violation of CFTC registration requirements).

principal, officer, managing member, or managing partner of the Black Diamond Entities during the relevant time period and was responsible for the day-to-day operations of each of the Black Diamond Entities. Accordingly, the Black Diamond Entities are liable for Salerno's violations of the Act and Regulations pursuant to Section 2(a)(1)(B) of the Act, and Regulation 1.2.

The Commission may seek a permanent injunction "[w]henever it shall appear to the Commission that any . . . person has engaged, is engaging, or is about to engage in any act or practice constituting a violation of any provision of this Act or any rule, regulation or order thereunder."[11] To obtain a permanent injunction, Plaintiff must show that Defendants violated the Act and are reasonably likely to commit future violations.[12] Future violations of the Act or Regulations "may be inferred, or even presumed, from past unlawful conduct, and the absence of proof to the contrary."[13] Plaintiff therefore has shown the likelihood of future violations, particularly as it does not appear that any of the traders have been repaid to date.

### B. *Chamberlain* Factors

The three *Chamberlain* factors weigh in favor of granting the default judgment here. First, Plaintiff will be prejudiced if default judgment is not entered. Defendants were properly served or waived service but failed to answer and have not otherwise contested the claims. Thus, denying the request for default judgment "will prejudice [Plaintiff] because [it] has 'no other means of vindicating [its] claims.'"[14]

The second factor—whether Defendants appear to have a meritorious defense—also

---

[11] 7 U.S.C. § 13a-1(a).

[12] *CFTC v. Am. Bd. of Trade, Inc.,* 803 F.2d 1242, 1250-51 (2d Cir. 1986).

[13] *CFTC v. Am. Metals Exch. Corp.*, 693 F. Supp. 168, 171 (D.N.J. 1988) (citing *CFTC v. Hunt*, 591 F.2d 1211, 1220 (7th Cir. 1979)).

[14] *Harty v. Azad Holdings LLC*, No. 14-6566, 2016 WL 4045338, at *3 (E.D. Pa. July 27, 2016) (quoting *Sowell v. RAV Investigatie & Security Servs., Ltd.*, No. 15-3657, 2016 WL 3014881, at *3 (E.D. Pa. May 26, 2016)).

supports entering default judgment here. Defendants have not asserted any defense in this action, whether by "responding to the Complaint or by responding to this Motion for Judgment After Default," or by otherwise contesting the allegations. [15]  As "it is 'not the court's responsibility to research the law and construct the parties' arguments for them,'"[16] there is no basis for determining that Defendants have a defense to offer.

Finally, Defendants' culpable conduct caused the default. "'Culpable conduct' refers to actions that are 'taken willfully or in bad faith.'"[17] A defendant's "failure or refusal to 'engage[] in the litigation process and [to] offer[] no reason for this failure or refusal'" can be considered culpable conduct.[18] The Court is unable to "find [any] excuse or justification for default, apart from Defendant's own culpability."[19] Accordingly, the Court hereby enters default judgment against Defendants and Relief Defendant Black Diamond Investment Group pursuant to Federal Rule of Civil Procedure 55(b) and orders the relief set forth below.

## III.   RELIEF GRANTED

### A.   Permanent Injunction and Trading Bans

1.     Pursuant to Section 6c of the Act, 7 U.S.C. § 13a-1 (2012), Defendants are permanently restrained, enjoined and prohibited from directly or indirectly engaging in conduct in violation of Section 4b(a)(2)(A)-(C) of the Act, 7 U.S.C. § 6b(a)(2)(A)-(C) and Regulation 5.2(b)(1) and (3), 17 C.F.R. §5.2(b)(1) and (3).

2.     Defendants are also permanently restrained, enjoined and prohibited from

---

[15] *Id.* at *4.

[16] *Travelers*, 351 F. Supp. 3d at 933 (quoting *Joe Hand*, 3 F. Supp. 3d at 271–72).

[17] *Innovative Office Prods., Inc. v. Amazon.com, Inc.*, No. 10-4487, 2012 WL 1466512, at *3 (E.D. Pa. Apr. 26, 2012) (quoting *Chamberlain*, 210 F.3d at 164).

[18] *Joe Hand Promotions, Inc. v. Yakubets*, 3 F. Supp. 3d 261, 272 (E.D. Pa. 2014) (quoting *E. Elec. Corp. of N.J. v. Shoemaker Constr. Co.*, 657 F. Supp. 2d 545, 554 (E.D. Pa. 2009)).

[19] *Einhorn v. Klayman Produce Co., Inc.*, No. 13-1720, 2013 WL 6632521, at *4 (E.D. Pa. Dec. 17, 2013).

directly or indirectly:

       (a)    trading on or subject to the rules of any registered entity (as that term is defined in Section la(40) of the Act, 7 U.S.C. § la(40));

       (b)    entering into any transaction involving "commodity interests" (as that term is defined in Regulation 1.3(yy), 17 C.F.R. § 1.3(yy)) for their own personal account or for any account in which they have a direct or indirect interest;

       (c)    having any commodity interests traded on their behalf;

       (d)    controlling or directing trading for or on behalf of any other person or entity, whether by power of attorney or otherwise, in any account involving commodity interests;

       (e)    soliciting, receiving, or accepting any funds from any person for the purpose of purchasing or selling any commodity interests;

       (f)    acting as a principal (as that term is defined in Regulation 3.1(a), 17 C.F.R. § 3.1(a)), agent, or any other officer or employee of any person registered, exempted from registration, or required to be registered with the Commission, except as provided for in Regulation 4.14(a)(9), 17 C.F.R. § 4.14(a)(9); and

       (g)    engaging in any business activities related to commodity interests.

**B.**    **Restitution**

3.    Defendants shall pay jointly and severally restitution in the amount of $298,103.31, plus a total of $37,046.22 in prejudgment interest. ("Restitution Obligation"). If the Restitution Obligation is not paid immediately, post-judgment interest shall accrue on the Restitution Obligation beginning on the date of entry of this Order and shall be determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant to 28 U.S.C. § 1961.

4.    To effect payment of the Restitution Obligation and the distribution of any restitution payments to Defendants' prospective traders, the Court appoints NFA as Monitor

("Monitor"). The Monitor shall receive restitution payments from Defendants and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

5.      Defendants shall make Restitution Obligation payments, and any post-judgement interest payments, under this Order to the Monitor in the name of "Michael Salerno/Black Diamond Restitution Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606, under cover letter that identifies the paying Defendant(s) and the name and docket number of this proceeding. Defendants shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

6.      The Monitor shall oversee the Restitution Obligation and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' prospective traders/customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. In the event that the amount of Restitution Obligation payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible prospective traders is impractical, the Monitor may, in its discretion, treat such restitution payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part D below.

7.      Defendants shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' prospective

traders/customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any Restitution Obligation payments. Defendants shall execute any documents necessary to release funds that they hold in any repository, bank, investment, or other financial institution, wherever located, in order to make partial or total payment toward the Restitution Obligation.

8.      The Monitor shall provide the CFTC at the beginning of each calendar year with a report detailing the disbursement of funds to Defendants' prospective traders/customers during the previous year. The Monitor shall transmit this report accompanied by a cover letter identifying the name and docket number of this proceeding to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st Street, N.W., Washington, DC 20581.

9.      The amounts payable to each prospective trader/customer shall not limit the ability of any prospective trader/customer from proving that a greater amount is owed from Defendants or any other person or entity, and nothing herein shall be construed in any way to limit or abridge the rights of any prospective trader/customer that exist under state or common law.

10.     Pursuant to Federal Rule of Civil Procedure 71, each prospective trader/customer of Defendants who suffered a loss is explicitly made an intended third-party beneficiary of this Order and may seek to enforce obedience of this Order to obtain satisfaction of any portion of the Restitution Obligation that has not been paid by Defendants, to ensure continued compliance with any provision of this Order, and to hold Defendants in contempt for any violations of any provision of this Order.

11.     To the extent that any funds accrue to the U.S. Treasury for satisfaction of

Defendants' Restitution Obligation, such funds shall be transferred to the Monitor for disbursement in accordance with the procedures set forth above.

### C.      Disgorgement

12.      Relief Defendant Black Diamond Investment Group shall pay disgorgement of $1,312, plus $176 in prejudgment interest, representing the gains illegally obtained to which it is not entitled.[20]

13.      To effect payment of the disgorgement obligations of Relief Defendant Black Diamond Investment Group and the distribution of any disgorgement payments to Defendants' customers, the Court appoints NFA as Monitor. The Monitor shall receive disgorgement payments from Black Diamond Investment Group and make distributions as set forth below. Because the Monitor is acting as an officer of this Court in performing these services, the NFA shall not be liable for any action or inaction arising from NFA's appointment as Monitor, other than actions involving fraud.

14.      Relief Defendant Black Diamond Group shall make its disgorgement payments, and any post- judgment interest payments, under this Order to the Monitor in the name "The Black Diamond Investment Group Disgorgement Fund" and shall send such payments by electronic funds transfer, or by U.S. postal money order, certified check, bank cashier's check, or bank money order, to the Office of Administration, National Futures Association, 300 South Riverside Plaza, Suite 1800, Chicago, Illinois 60606 under cover letter that identifies the paying Relief Defendant and the name and docket number of this proceeding. The Relief Defendant shall simultaneously transmit copies of the cover letter and the form of payment to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette Centre, 1155 21st

---

[20] McCormack Decl. [Doc. No. 27-2] at ¶¶ 38-43.

Street, NW, Washington, D.C. 20581.

15.     The Monitor shall oversee the disgorgement obligations and shall have the discretion to determine the manner of distribution of such funds in an equitable fashion to Defendants' customers identified by the Commission or may defer distribution until such time as the Monitor deems appropriate. To the extent Defendants' customers receive restitution from Defendants or are otherwise compensated for their losses, the disgorgement obligation of the Relief Defendant will be respectively reduced. In the event that the amount of disgorgement payments to the Monitor are of a *de minimis* nature such that the Monitor determines that the administrative cost of making a distribution to eligible customers is impractical, the Monitor may, in its discretion, treat such disgorgement payments as civil monetary penalty payments, which the Monitor shall forward to the Commission following the instructions for civil monetary penalty payments set forth in Part D below.

16.     Relief Defendant shall cooperate with the Monitor as appropriate to provide such information as the Monitor deems necessary and appropriate to identify Defendants' customers to whom the Monitor, in its sole discretion, may determine to include in any plan for distribution of any disgorgement payments. Relief Defendant shall execute any documents necessary to release funds that it has in any repository, bank, investment or other financial institution, wherever located, in order to make partial or total payment towards its disgorgement obligation.

**D.      Civil Monetary Penalty**

17.     Defendants are ordered to pay, on a joint and several basis, a civil monetary penalty in the amount of $894,000, plus post-judgment interest thereon ("CMP Obligation"). If the CMP Obligation is not paid in full within thirty days of the date of entry of this Order, then

post-judgment interest shall accrue beginning on the date of entry of this Order and shall be

determined by using the Treasury Bill rate prevailing on the date of entry of this Order pursuant

to 28 U.S.C. § 1961 (2012).

18.      Defendants shall pay their CMP Obligation and any post-judgment interest by

electronic funds transfer, U.S. postal money order, certified check, bank cashier's check, or bank

money order. If payment is to be made other than by electronic funds transfer, then payment

shall be made payable to the Commodity Futures Trading Commission and sent to:

> MMAC/ESC/AMK326
> Commodity Futures Trading
> Commission Division of Enforcement
> 6500 S. MacArthur
> Blvd. HQ Room 181
> Oklahoma City, OK 73169
> (405) 954-6569
> office (405) 954-
> 1620 fax
> 9-AMC-AR-CFTC@faa.gov

If payment by electronic funds transfer is chosen, Defendants shall contact Marie Thorne or

her successor at the address above to receive payment instructions and shall fully comply

with those instructions. Defendants shall accompany payment of the CMP Obligation with a

cover letter that identifies Defendants and the name and docket number of this proceeding.

Defendants shall simultaneously transmit copies of the cover letter and the form of payment

to the Chief Financial Officer, Commodity Futures Trading Commission, Three Lafayette

Centre, 1155 21st Street, N.W., Washington, DC 20581.

**E.      Asset Freeze is Lifted**

19.      Pursuant to the SRO entered by the Court on April 17, 2019, Plaintiff *froze de*

*minimis* amounts of money in accounts for Advanta Capital Markets, Inc. at SunTrust Bank, for

BDF Trading, LP at Wells Fargo, and for Salerno at Sun Federal Bank. As these *de minimis*

amounts are too small to distribute to 224 customers, the freeze on those accounts is hereby lifted.

### F.   Miscellaneous Provisions

20.    Partial Satisfaction: Acceptance by the CFTC or the Monitor of any partial payment of the Restitution Obligation, the disgorgement obligations or the CMP Obligation shall not be deemed a waiver of Defendants' or Relief Defendant Black Diamond Investment Group's obligation to make further payments pursuant to this Order, or a waiver of the CFTC's right to seek to compel payment of any remaining balance.

21.    Notice: All notices required to be given by any provision in this Order shall be sent certified mail, return receipt requested, as follows:

Notice to Commission:
     Scott R. Williamson, Acting Deputy Director
     525 West Monroe, Suite 1100
     Chicago, IL. 60661

Notice to Defendants:
     Michael J. Salerno
     205 Country View Lane
     Northampton, PA 18067

Notice to NFA:
     Daniel Driscoll, Executive Vice President,
     COO National Futures Association
     300 S. Riverside Plaza, Suite 1800
     Chicago, IL 60606-3447

22.    Change of Address/Phone: Until such time as Defendants and Relief Defendant Black Diamond Investment Group satisfy in full their Restitution Obligation, Disgorgement Obligation, and CMP Obligation as set forth in this Order, Defendants and Relief Defendant shall provide written notice to the Commission by certified mail of any change to the telephone number and mailing address within ten calendar days of the change.

23.     Invalidation: If any provision of this Order or if the application of any provision or circumstance is held invalid, then the remainder of this Order and the application of the provision to any other person or circumstance shall not be affected by the holding.

24.     Injunctive and Equitable Relief Provisions: The injunctive and equitable relief provisions of this Order shall be binding upon Defendants, Relief Defendant Black Diamond Investment Group, upon any person under their authority or control, and upon any person who receives actual notice of this Order, by personal service, email, facsimile or otherwise insofar as they are acting in active concert or participation with Defendants or Relief Defendant.

25.     Continuing Jurisdiction of this Court: This Court shall retain jurisdiction of this action to ensure compliance with this Order and for all other purposes related to this action,

including any motion by Defendants or Relief Defendant Black Diamond Investment Group to modify, or for relief from, the terms of this Order.

**AND NOW**, this 23rd day of September 2020, it is hereby **ORDERED** that Plaintiff's Motion for Default Judgment [Doc. No. 26] is **GRANTED** and Default Judgment is entered against Defendants Michael J. Salerno, Black Diamond Forex LP, BDF Trading LP, and Advanta Capital Markets, Inc and Relief Defendant Black Diamond Investment Group as set forth above.

It is further **ORDERED** that the Clerk is directed to **CLOSE** the case.

It is so **ORDERED**.

BY THE COURT:

/s/ Cynthia M. Rufe

CYNTHIA M. RUFE, J.

14